Martin A. Muckleroy
**MUCKLEROY LUNT, LLC**
Nevada Bar No. 9634
6077 S. Fort Apache Rd., Ste. 140
Las Vegas, NV 89148
Tel.: (702) 907-0097
Email: martin@muckleroylunt.com
[Additional Captions on Signature Page]
*Counsel for Plaintiff Nelson Baker*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| NELSON BAKER, On Behalf of Himself and All Others Similarly Situated,<br><br>                 Plaintiff,<br>      v.<br><br>KLONDEX MINES LTD., RICHARD J. HALL, PAUL HUET, WILLIAM MATLACK, CHARLES OLIVER, BLAIR SCHULTZ, RODNEY COOPER, MARK DANIEL, and JAMES HAGGARTY,<br><br>             Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nelson Baker ("Plaintiff"), through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and the other public stockholders of Klondex Mines Ltd. ("Klondex" or the "Company") (other than Defendants outlined below), against the Company and its Board of Directors (the "Board" or "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") in connection with the

proposed acquisition (the "Proposed Transaction") of Klondex by Hecla Mining Company ("Hecla").

2.     On March 19, 2018, the Board caused the Company to enter into a definitive arrangement agreement (the "Arrangement Agreement") with Hecla and 1156291 B.C. Unlimited Liability Company ("Merger Sub"), pursuant to which Klondex will become an indirect wholly-owned subsidiary of Hecla and each share of Klondex common stock will be converted into the right to receive (i) the equivalent of $2.47 in either cash, shares of Hecla common stock, or a combination of cash and Hecla shares, plus (ii) 0.125 of a share of Havilah Mining Corporation ("Havilah"), a new company formed to hold Klondex's Canadian assets.[1]

3. In order to convince Klondex's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a Schedule DEFM14A proxy statement with the Securities and Exchange Commission on or about June 12, 2018 (the "Proxy Statement" or "Proxy"), which contains, in violation of Sections 14(A) and 20(a) of the Exchange Act, incomplete and materially misleading information regarding: (i) the financial analyses conducted by the Company's financial advisors,   GMP Securities, L.P. ("GMP"), INFOR Financial Inc. ("INFOR"), and Maxit Capital ("Maxit") (collectively, the "Financial Advisors"), in connection with the Proposed Transaction; and (ii) the financial projections for Klondex, Havilah, Hecla, and the *pro forma* combined company.

---

[1]     With further respect to the Hecla consideration, Klondex stockholders may elect to receive, for each share of Klondex common stock, either: (i) $2.47 in cash; (ii) 0.6272 of a Hecla share; or (iii) $0.8411 in cash and 0.4136 of a Hecla share. The cash consideration and the share consideration are subject to proration, based on a maximum cash consideration of $157.4 million and a maximum number of Hecla shares issued of 77.4 million.

4.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Klondex stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and Section 20(a) of the Exchange Act.

6.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

**A.     Plaintiff**

8.     Plaintiff is, and at all relevant times was, a continuous owner of Klondex common stock.

**B.** **Defendants**

9.     Defendant Klondex Mines Ltd. (previously defined as "Klondex") is a corporation organized and existing under the laws of the Canadian Province of British Columbia with its principal executive offices located at 6110 Plumas Street Suite A, Reno, Nevada 89519. Shares of Klondex common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "KLDX."

10.     Defendant Richard J. Hall ("Hall") has served as a director of the Company at all relevant times. He also currently serves as the Chairman of the Company's Board.

11.     Defendant Paul Huet ("Huet") has served as a director of the Company at all relevant times. He also currently serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant William Matlack ("Matlack") has served as a director of the Company at all relevant times.

13.     Defendant Charles Oliver ("Oliver") has served as a director of the Company at all relevant times

14.     Defendant Blair Schultz ("Schultz") has served as a director of the Company at all relevant times.

15.     Defendant Rodney Cooper ("Cooper") has served as a director of the Company at all relevant times.

16.     Defendant Mark Daniel ("Daniel") has served as a director of the Company at all relevant times.

17.     Defendant James Haggarty ("Haggarty") has served as a director of the Company at all relevant times.

18.     Defendants Hall, Huet, Matlack, Oliver, Schultz, Cooper, Daniel, and Haggarty form the Board of Directors of Klondex and are collectively referred to herein as the "Board" or the "Individual Defendants." Each of the Individual Defendants at all relevant times had the power to control and direct Klondex to engage in the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Klondex (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable. As of May 15, 2018, there were approximately 180,079,072 outstanding shares of Klondex common stock.  The actual number of public shareholders of Klondex will be ascertained through discovery.

22.     Questions of law and fact are common to the Class, including, among others:

   a.  Whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

   b.  Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   c.  Whether Plaintiff and other members of the Class will suffer irreparable harm if the Proposed Transaction is consummated as presently anticipated.

5

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**A.      Relevant Corporate Background**

26.     Headquartered in Reno, Nevada, Klondex engages in the acquisition, exploration, and development of mineral resources in the United States and Canada. Klondex has 100% interests in three producing mineral properties: the Fire Creek Mine, the Midas Mine and ore milling facility, and the Hollister Mine, all of which are located in the state of Nevada. Klondex also has a 100% interest in the True North Mine and mill in Manitoba, Canada and the Aurora Mine and ore milling facility, located in Nevada.

According to the Company's website, "Klondex is operating two of the highest grade gold mines in operation today."

**27.**     According to the Company's March 15, 2018 press release announcing its financial results for the fourth quarter and full-year 2017, Klondex mined a total of 222,233 gold equivalent ounces ("GEOs") in 2017, with production of 189,456 GEOs, an increase of 17% from 161,289 GEOs produced during 2016. In commenting on these results, Defendant Huet, the Company's CEO and President, stated that "[t]he Company produced more ounces and generated more revenue during 2017 ***than any year in the organization's history.***" (emphasis added). Defendant Huet added further that the "Company is in an enviable position by owning outstanding assets in one of the best mining jurisdictions of the world."

28.     These financial results and the operational performance reflected thereby are nothing new. Indeed, in a November 9, 2017 press release announcing the Company's financial results for the third quarter 2017, Defendant Huet commented: "[a] significant accomplishment was reached during the third quarter as we began processing Hollister ore through the Midas mill for the first time . . . . We are making significant progress in ramping up True North and Hollister to full production." What is more, according to the Company's August 9, 2017 press release announcing its financial results for the second quarter 2017, the Company generated "$30.0 million of operating cash flow in Q2 2017 compared to $15.4 million a year ago quarter, an increase of approximately **95%**" (emphasis added). In commenting on these results, Defendant Huet stated:

Our Q2 2017 operational and financial performance was the strongest in the Company's history. Our core assets in Nevada continued to perform exceptionally well and, as a result, have allowed us to increase our consolidated production

guidance for the year at slightly lower costs. Additionally, we have continued to maintain strong liquidity and a healthy balance sheet, ending the quarter with over $40 million in cash.

29.     Incorporated in 2006, Hecla is engaged in discovering, acquiring, developing and producing silver, gold, lead, and zinc. Hecla and its subsidiaries provide precious and base metals to the United States and around the world. The company produces lead, zinc, and bulk concentrates, which it markets to custom smelters and brokers, and unrefined bullion bars containing gold and silver, which are further refined before sale to precious metals traders.

**B.**     **Events Leading to the Proposed Transaction**

30.     According to the Proxy, in the fall of 2017, Klondex received a number of unsolicited expressions of interest from various mining companies, including Hecla, to conduct exploratory due diligence regarding Klondex. Although Klondex was not then considering a sale of the company, the Board determined to allow the companies to conduct due diligence, in connection with which Klondex entered into, or proposed to enter into, confidentiality agreements with each such party. On November 15, 2017, Klondex executed a confidentiality agreement with Hecla.

31.     On November 10, 2017, the closing trading price of Klondex shares on the NYSE declined by $0.40, from $2.90 to $2.50, purportedly in response to the release of Klondex's earnings results for its third quarter ended September 30, 2017. As a result, the Board and Klondex management began to discuss potential measures to improve Klondex's financial condition and results, including looking for a strategic equity investor, undertaking a broader equity financing or debt refinancing, and streamlining operations at True North.

32. In mid-November 2017, an existing Klondex investor provided an unsolicited non-binding term sheet to Defendant Huet for the purchase of 10 million Klondex shares at a proposed price of C$3.00 per Klondex share. At that time, management believed Klondex had sufficient cash on hand and would generate sufficient cash from operations such that it did not need the funds from this proposal immediately, and that there was sufficient time to explore other financing alternatives. At the same time, representatives of GMP indicated that they had contacted a select number of parties on a "no names basis" regarding a potential equity private placement in Klondex, and that the responses were generally not positive. After deliberation, the Board determined to give management additional time to prepare a budget and cash flow forecast for 2018 (along with a suggested plan), declined to proceed with the proposal, and instead engaged GMP and INFOR to seek out potential strategic equity investors in the Company on a private placement basis. Between December 2017 and January 2018, GMP and INFOR contacted a number of potentially interested parties regarding a strategic equity investment in Klondex, as a result of which two additional parties executed confidentiality agreements to perform due diligence on Klondex.

33. On January 24, 2018, Hecla delivered a proposal letter (the "Initial Hecla Proposal Letter") that set forth a non-binding proposal to acquire all of the issued and outstanding Klondex shares for an aggregate purchase price of $630 million, payable in cash, Hecla shares, or combination thereof, which represented a purchase price per Klondex share of $3.35. Upon receipt of the Initial Hecla Proposal Letter, Klondex management requested that GMP and INFOR conduct a "market check" of those entities who were conducting due diligence on Klondex to determine the likelihood of receiving

any proposal from such entities. On January 26, 2018, GMP and INFOR advised that none of the potential investors that had been contacted appeared to be interested in making a strategic investment in Klondex in the near-term, that discussions with these counterparties were not progressing quickly, and that none of these entities had expressed an interest in acquiring all of Klondex. Also on January 26, 2018, the Board determined *not* to conduct a broader market check for other potential buyers, but instead to pursue the Hecla proposal, subject to the following changes: (i) an increase in the total consideration payable to $667 million (or $3.50 per Klondex share); (ii) deal protection terms more favorable to Klondex, including a termination fee equal to 3% of the equity value of the transaction; (iii) a reverse break-fee of 3% of the equity value of the transaction in favor of Klondex in certain circumstances; (iv) a condition in favor of Klondex to carry out confirmatory due diligence on Hecla; and (v) a $15 million line of credit from Hecla on or prior to the execution of the definitive agreement. Finally, also on January 26, 2018, the Board determined to form an Independent Committee of Klondex directors comprised of Defendants Hall (Chair), Cooper, Oliver, and Schultz to conduct the sales process.

34.     On January 28, 2018, Phil Baker, the President and Chief Executive Officer of Hecla, and Defendant Hall (Chair of the Board and Independent Committee) had a telephone discussion regarding Klondex's comments on the Initial Hecla Proposal Letter. On the following day, January 29, 2018, Hecla's financial advisor delivered a revised proposal letter (the "Revised Hecla Proposal Letter") proposing: (i) an aggregate purchase price of $647 million (or $3.44 per Klondex share), with the consideration being payable in Hecla shares or a combination of Hecla shares and cash; (ii) a break-fee of $25 million (or 3.9% of the aggregate equity value of the transaction) payable to Hecla in

certain circumstances upon termination of the definitive agreement; (iii) a reverse break-fee of $25 million payable to Klondex upon termination of the definitive agreement by Hecla in order to permit Hecla to enter into a transaction pursuant to which Hecla would be acquired by a third party; and (iv) an exclusivity period to February 25, 2018. The Revised Hecla Proposal Letter set a deadline of 5:00 p.m. Pacific Standard Time on January 30, 2018 for Klondex to respond.[2]

35.    On January 30, 2018, the Independent Committee recommended to the Board that Klondex proceed with executing the Revised Hecla Proposal Letter, the Board resolved to execute the Revised Hecla Proposal Letter, and Klondex executed the Revised Hecla Proposal Letter with Hecla. Thereafter, on February 11, 2018, Mr. Baker met with Defendant Hall to discuss, among other things, the possibility of spinning out Klondex's Canadian assets to Klondex shareholders through a new publicly-listed Canadian corporation (Havilah), as Hecla had determined that it was only interested in Klondex's Nevada assets and not its Canadian assets, and the possibility of a potential cash investment by Hecla into Havilah.

36.    On February 12, 2018, the Independent Committee engaged Maxit as its financial advisor in connection with the process.

37.    During February 2018, the trading price of Klondex shares again declined from a closing price of $2.27 on the NYSE on February 1, 2018 to a closing price of $1.32 on the NYSE on February 28, 2018, purportedly following the release of Klondex's production results for 2017 and production guidance for 2018, as well as an updated

---

[2]    Hecla also proposed to allow Klondex to carry out due diligence on Hecla and was receptive to granting Klondex a line of credit, which Klondex later determined it did not require.

report on mineral reserves and resources at Fire Creek that was released by Klondex on February 6, 2018. Following these events, discussions between the parties' respective financial advisors focused on potential revisions to the proposed consideration reflected in the Revised Hecla Proposal Letter and further due diligence of Klondex's assets. In light of these discussions, the Board became "concerned about Hecla repricing its proposal to a much lower amount or even walking away from the transaction." As a result, the Board began to explore other potential alternative options, including a potential rights offering and preparing a short form base shelf prospectus to access the capital markets in the event that a transaction with Hecla did not proceed.

38.     Unsurprisingly, on February 16, 2018, Mr. Baker contacted Defendant Hall and indicated that Hecla and Klondex would not be able to settle a definitive Arrangement Agreement by the expiration of the exclusivity period, but did confirm that any transaction would include a spin-out of Klondex's Canadian assets. And, on February 23, 2018, Mr. Baker indicated that Hecla was planning on providing a revised proposal, which would include a revised price, a spin-out of Klondex's Canadian assets, and an extended exclusivity period.

39.     On February 25, 2018, the Board held a meeting, at which it discussed, among other things, the financing options and other potential alternatives and strategies available to Klondex if Klondex determined not to extend Hecla's exclusivity period or if a transaction did not materialize with Hecla. Later on the same day, the Independent Committee met and agreed to recommend to the Board to extend the exclusivity period until March 5, 2018, with the understanding that if on or before the expiration of the exclusivity period satisfactory progress was made on the Arrangement, and there was

greater clarity with respect to Hecla's pricing of Klondex in respect of the Arrangement, including a value attributed to Havilah and a determination of the amount of cash Hecla would be proposing to invest in Havilah, then Klondex would consider extending Hecla's exclusivity to March 12, 2018.

40.    On February 26, 2018, Hecla agreed to an extension of the exclusivity period from February 28, 2018 to March 5, 2018 with a potential further extension of the exclusivity period to March 12, 2018. Then, at the end of February 2018 – when, according to the Proxy, "the exclusivity period with Hecla was ongoing" – Defendant Huet was contacted by the Chairman and Chief Executive Officer of a third-party mining company to discuss a potential "merger of equals" between the two parties. According to the Proxy, in accordance with Klondex's exclusivity obligations to Hecla, Defendant Huet did not entertain such discussions. The Proxy does not disclose the proposed financial terms, if any, of this potential transaction. Then, in early March 2018 – again, according to the Proxy, "while the exclusivity period with Hecla was ongoing" – Defendant Huet was again contacted by another Chief Executive Officer of a producing mining company to discuss the potential acquisition of Klondex, and again Defendant Huet, "in accordance with Klondex's exclusivity obligations to Hecla," did not entertain such discussions.

41.    On March 5, 2018, as the Hecla exclusivity period was to end, Hecla's financial advisor delivered a revised draft of the Revised Hecla Proposal Letter, which contemplated: (i) **an aggregate purchase price equal to $507 million** (of which a portion was attributed to the Havilah shares to be distributed to Klondex shareholders, with the balance payable in cash, Hecla shares, or a combination thereof), which

represented a purchase price per Klondex share of US$2.66 – **an aggregate decrease from the Revised Hecla Proposal Letter of $140 million or approximately $0.78 per share**; (ii) an extension of the expiration of the exclusivity period from March 5, 2018 to March 12, 2018; and (iii) a reciprocal break fee of $20 million (3.9% of the equity value of the transaction with Hecla). Importantly, the revised draft of the Revised Hecla Proposal Letter ascribed a value of $70 million to Havilah and also provided that Hecla would subscribe for $5 million of Havilah common shares. Notably, in connection with the revised proposal, GMP and INFOR indicated that they believed the $70 million value being attributed to Klondex's Canadian assets was too high and that the Company should request an increased price based on a number of factors, including a reallocation of the value Hecla attributed to Klondex's Canadian assets relative to its Nevada assets.

42.    On March 6, 2018, the Independent Committee recommended to the Board that Klondex: (i) further negotiate with Hecla to request an increased price of $555 million; and (ii) extend the exclusivity period with Hecla to March 12, 2018, which recommendation the Board accepted. **At no point did the Independent Committee or the Board appear to even consider engaging with the two other competing bidders who had contacted Klondex in late February or early March.**

43.    On March 7, 2018, Defendant Hall contacted Mr. Baker and noted that Klondex (i) requested that the total consideration be increased to $555 million, including a reallocation of the value being attributed to Klondex's Canadian assets and Nevada assets, (ii) preferred that the consideration consist of Hecla shares to the maximum extent permissible without triggering the requirement for a Hecla shareholder meeting, and (iii) would be agreeable to extending the exclusivity period with Hecla to March 12, 2018.

Thereafter, on March 8, 2018, Hecla's financial advisor delivered a further revised draft of the Revised Hecla Proposal Letter (the "Final Hecla Proposal Letter"), which was a "best and final proposal" and contemplated an increase in the total price to $515 million, which represented a purchase price per Klondex share of $2.71 – **or a decrease from the Revised Hecla Proposal Letter of $132 million, or approximately $0.73 per share** – payable in a combination of: (i) Hecla shares and cash totaling $470 million and (ii) Havilah shares with an ascribed value of $45 million. The reciprocal break-fee in respect of the transaction was proposed to remain at 3.9% of the equity value of the transaction. The Final Hecla Proposal Letter also reiterated Hecla's previous request for voting support agreements in favor of Hecla entered into by Klondex management and certain specified institutional shareholders of Klondex.  Finally, GMP and INFOR advised that Hecla had confirmed that "under no condition would Hecla negotiate further and that Hecla set a deadline of 12:00 p.m. (Pacific Daylight Time) on March 11, 2018 for Klondex to respond."

44.     On March 9, 2018, the Independent Committee provided its unanimous recommendation to the Klondex Board that Klondex proceed with executing the Final Hecla Proposal Letter, which recommendation the Board accepted. Thereafter, Klondex executed the Final Hecla Proposal Letter with Hecla.

45.     Thereafter, on March 16, 2018, during a meeting of the Board, "GMP Securities and INFOR Financial, financial co-advisors to Klondex, gave a detailed presentation to the Klondex Board," which concluded with GMP providing its oral fairness opinion regarding the Proposed Transaction. The Board then adjourned to permit the Independent Committee to consider the Arrangement Agreement, with the other members of the

Klondex Board and legal counsel present at the invitation of the Independent Committee. At the meeting of the Independent Committee, Maxit, financial advisor to the Independent Committee, then provided its oral fairness opinion to the Independent Committee. The Independent Committee then met *in camera* and agreed to accept the fairness opinion received from Maxit, after which it unanimously determined that the Arrangement Agreement was in the best interests of Klondex and fair to the Klondex security holders. Immediately following the Independent Committee meeting, the Board reconvened, at which time the Independent Committee provided its unanimous recommendation to the Board that Klondex enter into the Arrangement Agreement. In light of this recommendation, the Board resolved and determined, among other things, to accept the fairness opinion received from GMP and to enter into the Arrangement Agreement.

46.     On March 16, 2018, the parties executed the Arrangement Agreement. And, on March 19, 2018, Klondex and Hecla issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

### HECLA TO ACQUIRE THREE HIGH-GRADE NEVADA GOLD MINES WITH THE ACQUISITION OF KLONDEX MINES LTD.

*Adds 27% more high-grade production to its strong North American silver and gold mines*

COEUR D'ALENE, IDAHO and VANCOUVER, BC -- Hecla Mining Company (NYSE:HL) (Hecla) and Klondex Mines Ltd. (NYSE American:KLDX; TSX:KDX) (Klondex) today announced Hecla will acquire all the outstanding shares of Klondex, a high-grade Nevada underground gold producer with its Fire Creek, Midas and Hollister mines, through a plan of arrangement (the Transaction). Klondex's Canadian assets will be spun out to its existing shareholders.

Under the Transaction, Hecla will acquire Klondex for consideration of US$462 million with a mix of cash and shares of Hecla common stock and the newly formed company (Klondex Canada). Klondex's shareholders will receive US$2.47 per share in cash or shares of Hecla, which represents a 59% premium to Klondex's 30-day volume-weighted average price, as at March 16, 2018 on the NYSE American.

"Opportunities to acquire significant land packages along Nevada's prolific gold trends are very rare. Rarer still are for these land packages to have the highest grade mines in the U.S. and this transaction is consistent with Hecla's strategy of owning large prospective land packages with mines where we can improve costs, grow reserves and expand production," said Phillips S. Baker, Jr., Hecla's President and CEO. "We structured the deal to use our excess cash balance so our shareholders can benefit from the approximately 162,000 gold equivalent ounces a year of production while minimizing dilution."

Mr. Baker continued, "One of our core strengths is operating high-grade, narrow-vein underground mines, and Klondex's three operating mines – Fire Creek, Midas and Hollister – are some of the highest-grade gold mines in the world. After extensive due diligence, we see significant opportunity to improve costs, throughput and recoveries over time with our expertise. The combined approximately 110 square mile land position offers the opportunity to make discoveries and grow the reserve base as we improve our knowledge of the geology, something we have done at our other operations. We expect this transaction to be accretive on many important financial and credit metrics, with potentially significant synergies. We are pleased that two significant Klondex shareholders have committed to support this transaction, and look forward to welcoming other Klondex shareholders to our company."

"This transaction is an excellent outcome for Klondex and our shareholders, delivering premium value and a clear pathway to develop and optimize the Nevada mining assets and create further value in the future," said Paul Huet, Klondex's President and CEO. "Hecla has a proven track record of developing and optimizing mining assets such as ours, and has a strong balance sheet that should help Fire Creek and our other properties reach their full potential. Hecla operates a diverse portfolio of some of the highest-grade mines in the world, and the addition of our assets strengthens the portfolio further. We are delighted to enter into this agreement and the Klondex board unanimously recommends that Klondex shareholders vote in favour of this transaction."

***

**Benefits to Klondex Shareholders**

- Immediate and significant premium of approximately 59% based on the 30-day volume weighted average price and approximately 72% based on closing price on March 16, 2018, with ongoing participation in upside through Hecla shares and through Klondex Canada shares.
- Superior financial strength and flexibility to support critical development and exploration programs for Klondex's assets.
- Hecla is well capitalized, with a lower cost of capital, making possible critical development and exploration programs for Klondex's assets.
- Proven track record of successfully acquiring and optimizing underground assets.
- Superior investment with enhanced liquidity and a far more diversified production and financial base.
- Hecla has extensive experience operating efficient underground mines for over 125 years.
- Ownership in Klondex Canada, a gold company created to leverage Klondex's exploration expertise and significant mining infrastructure assets in Canada.

**Klondex Canada**

Klondex is pleased to be forming Klondex Canada. Certain members of Klondex's board and management team will continue on at Klondex Canada. Hecla will subscribe for US$7.0 million of common shares of New Klondex in exchange for a 13.46% equity interest, based on a pre-investment Klondex Canada valuation of US$45 million. Klondex Canada intends to make an application to list its shares on the TSX-V.

**Terms of the Transaction**

Klondex shareholders may elect to receive either US$2.47 in cash (Cash Alternative) or 0.6272 of a Hecla share (Share Alternative), each full Hecla share being currently valued at US$3.94, subject in each case to pro-ration based on a maximum cash consideration of US$157.4 million and a maximum number of Hecla shares issued of 77.4 million. If all Klondex shareholders elect either the Cash Alternative or the Share Alternative, each Klondex shareholder would be entitled to receive US$0.8411 in cash and 0.4136 Hecla shares. Klondex shareholders may also elect to receive US$0.8411 in cash and 0.4136 of a Hecla share and Klondex shareholders who fail to make an election will automatically receive US$0.8411 in cash and 0.4136 of a Hecla share. Klondex shareholders will also receive shares of a newly formed company (Klondex Canada) which will hold Klondex's Canadian assets, including the True North and Bison Gold Resources properties.

At closing existing Hecla and Klondex shareholders will own approximately 83.8% and 16.2% of Hecla's outstanding common stock, respectively.

**C.**      **The Materially Incomplete and Misleading Proxy Statement**

47.      In order to convince Klondex's stockholders to vote in favor of the Proposed Transaction, on June 12, 2018, the Individual Defendants authorized the filing of the Schedule DEFM14A proxy statement with the SEC in connection with the Proposed Transaction (previously defined as the "Proxy" or "Proxy Statement"). As discussed below, the Proxy Statement omits and/or misrepresents material information that must be disclosed to Klondex's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

**1.**      **Material Misstatements and/or Omissions Regarding Maxit's Valuation Analyses**

48.      First, the Proxy Statement fails to disclose material key inputs and assumptions underlying the analyses conducted by Maxit. Specifically, in connection with Maxit's *NAV Analysis* of Klondex, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discounted cash flow analysis performed in connection with the *NAV Analysis*; (ii) the results of the discounted cash flow analysis; and (iii) the bases for the application of the selected discount rate ranges of 5.0% to 7.0% for Klondex. Proxy Statement, 93-94. In connection with Maxit's *NAV Analysis* of Hecla, the Proxy Statement fails to disclose: (i) the NAV analysis of Hecla performed by Hecla that was provided to Maxit; and (ii) the adjustments made thereto by Maxit. Proxy Statement, 93-94. By omitting the above-mentioned information from the *NAV Analysis*, the *NAV Analysis* is rendered incomplete and misleading. This information is even more material

in light of the fact that Maxit's *NAV Analysis* fails to include an analysis of the *pro forma* combined company. Proxy Statement, 94. In light of the fact that the merger consideration is comprised predominantly of Hecla common stock, the value of Hecla's stock and the *pro forma* company's stock on a going forward basis is plainly material to the value of the consideration that Klondex stockholders are receiving.

49.     In connection with Maxit's *Comparable Trading with Control Premium Approach* and *Precedent Transaction Approach*, the Proxy Statement fails to disclose the P/NAV and P/Cash flow values for each of the comparable companies and precedent transactions that were utilized in the analyses. Proxy Statement, 94-95. Similarly, in connection with Maxit's *Transaction Premiums Analysis,* the Proxy Statement fails to disclose the "Premium to Last Undisturbed" and "Premium to 20-Day VWAP for Each" for each of the precedent transactions that were utilized in the analysis. Proxy Statement, 96. Without such information, Klondex's stockholders are unable to determine how the values used in determining Klondex's or Hecla's value compare to the selected companies or transactions used as comparisons. As a result, stockholders are unable to assess whether Maxit utilized unreasonably low values, thereby rendering the implied share of Klondex ranges set forth in the analyses misleading.

50.     Finally, the Proxy Statement discloses that "Maxit Capital, among other considerations, calculated Hecla's NAV per share *pro forma* the Arrangement, assuming full proration, as US$2.64 per *pro forma* Hecla Share based on consensus analyst estimates and US$3.91 per *pro forma* Hecla Share based on the NAV analysis as outlined above."    Proxy Statement, 97. However, the Proxy fails to disclose any inputs or assumptions regarding this critical analysis. As noted above, in light of the fact that the

merger consideration is comprised predominantly of Hecla common stock, the value of the *pro forma* company's stock on a going forward basis is plainly material to the value of the consideration that Klondex stockholders are receiving.

### 2. Material Misstatements and/or Omissions Regarding GMP's Valuation Analyses

51. Second, the Proxy Statement fails to disclose ***any*** of the underlying analyses conducted by GMP.[3] More specifically, while the Proxy Statement discloses that GMP performed a *Trading and Historical Share Price Analysis*, *Consideration Analysis*, *Precedent Transaction Analysis*, and *Comparable Multiple Analysis*, and provides a general description of these analyses, it entirely fails to disclose the inputs and assumptions underlying these analyses ***or the results of the analyses***. Proxy Statement, 104-05. Without such information, Klondex's stockholders are unable to evaluate the analyses in any way or assess whether reliance on these analyses was reasonable.

### 3. Material Misstatements and/or Omissions Regarding the Projections for Klondex, Havilah, Hecla, and the *Pro Forma* Combined Company

52. Finally, the Proxy Statement fails to provide sufficient information concerning the financial projections that were relied upon by the Board, Klondex, and the Financial Advisors in performing their respective valuation analyses in connection with the Proposed Transaction.

53. Specifically, the Proxy Statement discloses that, in performing its financial analyses, Maxit reviewed, among other things, "internal management forecasts, development and operating projections, estimates (including future estimates of mineable

---

[3] According to the Proxy, "[u]nder the GMP/INFOR Engagement Letter, the Klondex Board requested that GMP Securities deliver an opinion to the Klondex Board as to the fairness . . . of the Arrangement Consideration . . . ." Proxy Statement, 101.

resources) and budgets prepared or provided by or on behalf of the Company and Hecla."
Proxy Statement, 89. The Proxy further discloses that GMP relied upon, among other
things, "financial forecasts, projections, models, [and] estimates[.]" Proxy Statement,
101. However, the only projections relied upon by the Financial Advisors in rendering
their respective "fairness opinions" for which a summary is expressly provided in the
Proxy Statement are certain projections prepared by Klondex management and Hecla
management. The Proxy fails to disclose *any* projections for Havilah or the *pro forma*
combined company, despite the fact that Maxit rendered an analysis regarding the value
of the *pro forma* company and Klondex management expressed "internal views" to Maxit
regarding the value of Havilah. Proxy Statement, 97. This information is especially
material in light of the fact that, upon closing of the Merger, Klondex stockholders will
own approximately 16.2% of Hecla and 86.54% of Havilah. Thus, the values of the *pro
forma* Hecla and the newly-created Havilah on a going forward basis are plainly material
to the value of the consideration that Klondex stockholders are receiving.

54.     In addition, although the Proxy Statement provides a summary of certain Klondex
projections (the "Klondex Projections") and Hecla projections (the "Hecla Projections"),
it fails to disclose constituent line items under either set of projections, thereby
precluding Klondex stockholders from evaluating their accuracy and reliability or
assessing whether reliance on these projections was reasonable. In particular, with respect
to the Klondex Projections, the Proxy fails to disclose the line items utilized in the
calculation of the Unlevered, After-Tax Free Cash Flows for the Fire Creek, Midas, and
Hollister Mines. And, with respect to the Hecla Projections, the Proxy fails to disclose the
line items utilized in the calculation of the consolidated cash flow from operations.

55.     In addition, with further respect to the Klondex Projections that are actually disclosed, the Proxy Statement provides Unlevered, After-tax Free Cash Flows for the Fire Creek, Midas, and Hollister Mines (a non-GAAP metric), but fails to reconcile the non-GAAP projections to GAAP. Proxy Statement, 99.  And, with further respect to the Hecla Projections that are actually disclosed, the Proxy Statement provides consolidated cash flow from operations (another non-GAAP metric), but again fails to otherwise reconcile the non-GAAP projections to GAAP. Proxy Statement, 101. When a Company discloses non-GAAP financial measures in a Proxy Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. By failing to disclose such information, the Proxy Statement is materially misleading and in violation of Rule 14a-9 and SEC Regulation G, 17 C.F.R. 244.100. At minimum, Defendants must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP metrics. Such information is necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

56.     Finally, the Proxy Statements fails to disclose why three separate Financial Advisors were retained in connection with the Proposed Transaction and, more specifically, whether any of the Financial Advisors suffered from any potential conflicts of interest that demanded the retention of the additional Financial Advisors.

57.     The Proxy Statement is materially incomplete and misleading because it omits the

information identified above. Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty and due care owed to Plaintiff and other public stockholders of Klondex.

### COUNT I

**On Behalf of Plaintiff and the Class Against**
**Klondex and the Individual Defendants for Violations of Section 14(a)**
**of the Securities Exchange Act of 1934 and Rule 14a-9 Promulgated Thereunder**

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the key inputs and assumptions of the financial analyses performed by the Financial Advisors in support of their respective fairness opinions and the projections used by the Financial Advisors in support of their respective financial analyses.

60.     In so doing, defendants made untrue statements of fact and omitted to state material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

61.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     During the relevant period, Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63.     Specifically, and as detailed above, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning certain material information regarding key inputs and assumptions underlying the Financial Advisors' respective financial analyses and the projections used by the Financial Advisors in support of their respective financial analyses.

64.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.     The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy Statement states that the Financial Advisors reviewed their respective financial analyses with the Board and that the Board considered the financial analyses provided by the Financial Advisors in their respective fairness

opinions. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

65.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

66.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

67.     Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

68.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Violations of Section 20(a) of the Securities Exchange Act of 1934**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

70.     The Individual Defendants acted as controlling persons of Klondex within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Klondex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of this document.

73.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Arrangement Agreement.   The Proxy Statement purports to describe the various issues

and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

76.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until the

Company discloses the material information discussed above which has been omitted from the Proxy Statement;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Directing Defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

June 15, 2018                           Respectfully submitted,


                                        **MUCKLEROY LUNT, LLC**

                                        By: */s/ Martin A. Muckleroy*
                                        Martin A. Muckleroy
                                        Nevada Bar No. 9634
                                        6077 S. Fort Apache Rd., Ste. 140
                                        Las Vegas, NV 89148
                                        Tel.: (702) 907-0097
                                        Email: martin@muckleroylunt.com

                                        *Counsel for Plaintiff Nelson Baker*


**OF COUNSEL:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
Christopher R. Tillotson, Esq.
1100 Poydras St., Suite 3200
New Orleans, LA 70163
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com
Christopher.tillotson@ksfcounsel.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*